## PASQUINI *v.* LOWERY.

*(Supreme Court, General Term, Third Department.* March 15, 1892.)

**1. NEGLIGENCE—FALL OF WALL—EVIDENCE.**

In an action to recover damages caused by the fall of a portion of a green wall resulting from the removal of its braces by defendant, evidence that the braces were of proper construction, that if they had remained the wall would not have fallen, and that where other braces were left the wall was unaffected by the wind, justified a finding that the removal of the braces caused the wall to fall.

**2. SAME—CONFLICTING EVIDENCE—DECISION OF REFEREE.**

A referee's finding of fact will not be disturbed where the evidence was sharply conflicting, involving the credibility of witnesses, and there is evidence to support the finding.

3. SAME—REMOVAL OF BRACES.

　　A contractor for the iron-work of a building, who removes braces from its walls placed there by the contracting mason, in consequence of which the walls fall under a strong wind, is guilty of negligence, and liable for the ensuing damages.

4. SAME—HIGH WINDS—PROXIMATE CAUSE.

　　The braces having been placed against the wall for the very purpose of guarding against high winds, and the fall having been caused by a high wind, but not a hurricane, defendant's contention that the removal of the braces was not a negligent act, because the accident that occurred could not be reasonably anticipated, was without merit; and the referee properly found that the removal of the braces was the proximate cause of the accident.

Appeal from judgment on report of referee.

Action by Attilio Pasquini against James L. Lowery, executor of Austin Gibbons, deceased. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*James B. Campbell,* for appellant. *Andrew Vanderzee,* for respondent.

PUTNAM, J. The facts of this case, as far as it is necessary to state them, are as follows: Holmes Bros., in the year 1883, had a contract to build a roundhouse on the West Shore Railroad, at Coeyman's Junction, 174 feet long on its northerly side, 67 feet 9 inches on its eastern and westerly sides, and 98 feet and 8 inches on its southerly side. Plaintiff had a contract under said Holmes Bros. to do the stone, brick, and mason work of said building. The defendant's testator, Austin Gibbons, also had a contract under said Holmes Bros. to do the iron-work. On Saturday evening, October 27, 1883, plaintiff had the brick wall on the north side of said roundhouse nearly completed. There were in that wall a number of window frames set and fastened in the wall, and plaintiff had placed braces of plank from 1½ to 2 inches thick and 6 inches wide, and from 18 to 20 feet long, fastened by 20-penny nails to these frames, and also to timbers on the floor of said roundhouse. The referee finds that between the time plaintiff's employes left off work on Saturday evening and the following Monday, at about 2 P. M., when they again commenced work, that the employes of Gibbons removed several of those braces, without the knowledge or consent of the plaintiff; that in consequence thereof a wind that arose on Monday, at about 2:30 o'clock P. M., blew down a part of the north wall, causing a damage to plaintiff, which is conceded to be $325, and for which this action is brought.

The evidence seems to be sufficient to sustain the findings of the referee that the braces in question were placed by plaintiff originally to keep in place the window frames, and, after such frames were fastened to the brick wall, to support the wall itself; that the braces were removed without the knowledge or consent of the plaintiff, and the effect of such removal was to cause the fall of the unfinished wall. It is shown that where the braces remained the wall was not affected by the wind; also that the braces were of plank of the size above mentioned, securely fastened to the window frames, and to timbers on the floor of said building. There was evidence given in the case that the braces were of proper construction, and that had they remained the wall would not have fallen. We think the direct evidence to that effect, and the fact, which is undisputed, that where the braces remained the wall was not affected by the wind, justified the finding of the referee that the removal of the braces caused the wall to fall. There was also evidence given upon the trial that said braces were removed by employes of Gibbons. The declarations of Beck, Gibbons' foreman, made immediately after the accident, were admitted in evidence without objection. He admitted that he removed the braces on Sunday because they were in his way. As a witness upon the trial, he also swore that he removed them. But he and Stetten, another employe of Gibbons, testified that on Sunday evening, at the time he left work, he re-

placed the braces. Certainly the evidence justified the finding of the referee that the braces were removed by Gibbons' employes between Saturday and Monday morning. But Beck and Stetten, two of such employes, testified that, although they loosened one end of the braces, before they left they replaced and renailed them. Under the circumstances, was the referee bound to believe this statement of defendant's employes? If so, if, in fact, Gibbons' men replaced the braces as they found them, it would follow that the referee's report could not be sustained.

We think, however, the evidence in the case was such that this court is not justified in overruling the referee upon this point. Of course the rule laid down in *Roosa* v. *Smith*, 17 Hun, 138, 139, that the general term cannot, in a doubtful case, upon conflicting evidence, assume the place of the referee, and determine from the mere reading of the evidence who is telling the truth or who is best entitled to credit, is well settled. Both Pasquini and Sewall, his foreman, testified that after the accident they saw the braces in question lying across the pits with iron upon them. They testified to this positively. Although there was conflicting evidence, and testimony tending to contradict their statements, yet the referee, who saw and heard these witnesses, believed what they said. If what Pasquini and Sewall positively testified to as to the braces that they had nailed up on Saturday night being across the pits on Monday, under the iron placed there by Gibbons' men, is true, then the testimony of Beck and Stetten, to the effect that, before they left the building on Sunday, Beck renailed the braces, must necessarily be untrue.

Again, Pasquini and Sewall both testified that, right after the accident, Beck, being charged with moving the braces, admitted that he did, as they were in the way, and he did not then claim that he had replaced them. His failure, when blamed for removing the braces, to claim that he replaced and renailed them, is equivalent to an admission that he had not done so. When his attention was called as a witness to what occurred immediately after the accident, when he was so charged with removing the braces, he fails to satisfactorily account for what then immediately took place. On the whole, the findings of the referee in this regard, and on the various questions of fact involved, has evidence in the case to support them, and, under well-settled rules, we would not be justified in reversing such findings as against evidence. It appears that it was not necessary for Gibbons' men to remove the braces to do the work they were called upon to perform, or, if it was, that the braces should have been replaced. There is sufficient evidence, then, to sustain the conclusions of the referee on the questions of fact involved in the case. It appears that plaintiff having his brick wall nearly erected, and having the same properly braced with plank securely fastened to the window frames in said walls, and timber on the floor of the building, so as to prevent said wall from falling, the defendant removed said braces, and negligently failed to replace the same, and, as a result of said act, the wall was blown down.

We think, these facts being established, that the referee's conclusion that the act of defendant's employe in removing and not replacing the said braces was negligent, is correct. It appears that the object of the braces was to prevent just such an accident as did occur. Plaintiff was lawfully, under his contract, engaged in building a wall, and the act of removing the braces necessary for the support of the wall, without his knowledge and consent, which the referee, on sufficient evidence, found was done, was a negligent act. If it was necessary for Gibbons' employes to move said braces, they should have notified the plaintiff of their intention. The cases cited by defendant on this question are not parallel. The case of *Cosulich* v. *Oil Co.*, (N. Y. App.) 25 N. E. Rep. 259, was where an accident occurred without any proof whatever of negligence on the part of the defendant, and it was held that negligence would not be presumed, the parties having no contractual relations. Here a wrongful—a negligent—act is shown; a tearing down of the braces

placed by plaintiff to sustain his work. So in the *Wiedmer Case*, 114 N. Y. 462, 21 N. E. Rep. 1041; *Reiss Case*, (N. Y. App.) 28 N. E. Rep. 24. No negligence was shown on the part of the defendants in either of these cases. It was held that negligence would not be presumed. But in this case an actual interference by Gibbons' employes was shown in tearing down the braces properly erected by plaintiff to support his walls. The defendant also cites the *Sutton Case*, 66 N. Y. 244; *Nicholson Case*, 41 N. Y. 528; and the *Reiss Case*, (N. Y. App.) 28 N. E. Rep. 24,—to sustain his position that defendant's act in removing the braces was not negligent; because the accident that occurred could not have been reasonably anticipated, and would not have happened unless under exceptional cases. The answer to this position is that the object of the braces must be deemed to have been to sustain the wall as against winds or any other force that might cause it to fall. It appears that the wind, at the time the wall fell down, was not extraordinary. It was not a hurricane. The plaintiff, as a witness, was asked: "*Question.* Was it a very unusually strong wind that blew at the time? *Answer.* No, sir; it blew very strong, but I saw it blow a great many times worse." It was to guard against such winds that the braces were placed. The referee was justified in finding that the accident might have been anticipated from the removal of the braces; also that such removal was the proximate cause of the accident, without which it would not have happened.

The claim is made by defendant that plaintiff's own negligence contributed to the accident. The testimony shows that plaintiff's own employes left the work Saturday night; that at that time the braces were all examined, and were in place, properly secured. The plaintiff's men again commenced work on Monday afternoon. We do not think that negligence can properly be attributed to plaintiff, because he did not examine the braces upon Monday morning to see whether any of them had been displaced. Having examined them on Saturday night, when he left work, plaintiff could properly presume that they would remain in the same situation on Monday. He was not bound to assume that some wrong-doer would in the mean time have removed the braces. Ordinarily, the question of contributory negligence is one of fact; and the referee, under the circumstances, the braces having been properly secured on Saturday, when the plaintiff quit work, could properly find absence of contributory negligence on the part of the plaintiff in not examining the braces upon Monday morning, and in assuming that they remained the same as when examined on Saturday night. There is also evidence in the case justifying the conclusion that the braces were properly erected, and of the proper size, and sufficient to sustain the wall. We have read through the case, and do not find any exceptions requiring consideration, except such as have been above discussed. The case seems to involve a question of fact. It is a case of conflicting evidence. It was tried before an able and experienced referee, and we see no reason why his conclusions in the case should be disturbed. It follows judgment should be affirmed, with costs. All concur.